**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

KRISTINA GERHARDT,

                                                    Civil No. 25-3808 (JRT/LIB)

                        Plaintiff,

v.

                                        **MEMORANDUM OPINION AND ORDER**
SUNRISE FOODS INTERNATIONAL (USA)        **DENYING DEFENDANT'S PARTIAL**
INC.,                                           **MOTION TO DISMISS**

                        Defendant.

---

Andrew T James, **BASSFORD REMELE PA,** 100 South Fifth Street, Suite 1500, Minneapolis, MN 55402, for Plaintiff.

Anne E. Baggott, Jordan Kurdi, Megan M. Carroll, **DENTONS US LLP**, 4520 Main Street, Suite 1100, Kansas City, MO 64111; David M. Wilk and Patrick Henry O'Neill, III, **LARSON KING**, 30 East Seventh Street, Suite 2800, St. Paul, MN 55101, for Defendant.

Plaintiff Kristina Gerhardt alleges that her former employer, Defendant Sunrise Foods International (USA) ("Sunrise"), failed to pay her wages owed—specifically a bonus—after she resigned.  Sunrise argues that Gerhardt's Minnesota Payment of Wages Act ("MPWA") claim should be dismissed because Gerhardt has not pled facts that support the statute's requirement that the contested bonus was earned at the time of her discharge.  The Court will deny Sunrise's motion because taking all facts alleged in the Complaint in Gerhardt's favor, Gerhardt has adequately alleged that she actually earned the bonus she seeks.

## BACKGROUND

### I.  FACTS

Gerhardt began working for Sunrise in November 2019.  (Not. Removal, Ex. 1 ("Compl.") ¶ 6, Sept. 30, 2025, Docket No. 1-2.)  She was tasked with building a food-grade vegetable oil sales program.  (*Id.* ¶ 9.)  In addition to her annual salary, her employment contract indicated that she would receive a bonus for all oil sales made on behalf of Sunrise.  (*Id.* ¶ 10.)

The Complaint includes a screenshot of part of Gerhardt's employment contract. (*Id.*)  For "Organic Crude Oil Derivatives products (COD)," the excerpt indicates that the "Bonus Pool Distributed amongst entire COD team" and "Pool distribution within team determined by Director – Oils with VP – Food Ingredients approval[.]"  (*Id.*)  For calculation of the bonus related to COD, the contract included the following language:

> Calculated as (($COD - $10,000,000) * .738%) (i.e. $60,000,000 of COD sales would create a $369,000 bonus pool)
>
> $COD – COD invoiced sales (Net of intercompany and buy/sell arrangements) from July 1st through June 30th
>
> Start date through June 30th, 2020 calculated using adjusted minimum ($5,000,000 vs $10,000,000)
>
> Formula to be reviewed annually; no retroactive charges.

(*Id*.)  For "[a]ll other products" the contract indicated the bonus was "[d]iscretionary[.]" (*Id.*)

In her Complaint, Gerhardt asserts that "nowhere in the above-quoted language, or in any other Sunrise Foods policy or contract applicable to Gerhardt, does it state that Gerhardt is only entitled to (or eligible for) a bonus if she is employed on June 30 of the following fiscal year, or that she must be actively employed by Sunrise Foods on the date on which the bonus was to be paid." (*Id.* ¶ 11.)

Gerhardt also states in her Complaint that "[s]ometime between August and November of 2022, Sunrise Foods unilaterally changed how it paid bonuses to the oil-sales team" and began treating "Gerhardt's sales of non-organic oils as 'other products' under the bonus plan, meaning those bonuses became . . . discretionary." (*Id.* ¶ 18.)

On the same day Gerhardt was hired, Sunrise also hired a "Director – Oils" identified in the Complaint as "Chris (a man)[.]" (*Id.* ¶¶ 8, 18.)  Chris and Gerhardt were the "COD team" for approximately 18 months.  (*See id.* ¶¶ 6–10, 20.)  Chris resigned his employment with Sunrise on June 7, 2024.  (*Id.* ¶ 20.)  Gerhardt alleges that Chris received his bonus "through the date of his resignation."  (*Id.* ¶ 22.)

After Chris left Sunrise, Gerhardt was the only oil-sales team member.  (*Id.* ¶ 23.)  Gerhardt alleges that Sunrise told her "that in lieu of an adjustment to her annual salary, she would receive the full pool (.738%) of eligible revenue."  (*Id.* ¶ 24.)

Gerhardt further alleges that in 2024 and 2025 she "consistently raised concerns to Sunrise Foods about the company's business dealings and related compliance issues."  (*Id.* ¶ 25.)  For example, she raised concerns about "unethical business practices" and

"issues regarding the manner in which she (a woman) was being compensated compared to her male counterparts." (*Id.*)

Gerhardt notified Sunrise of her resignation on February 21, 2025. (*Id.* ¶ 27.) Her last day of employment was March 7, 2025. (*Id.*) After she resigned "she was informed by Sunrise Foods that she would not be paid *any* bonus for fiscal year 2025." (*Id.* ¶ 29.) In April 2025, Gerhardt "made a timely demand for payment under Minnesota law" for payment of the bonus earned in fiscal year 2025. (*Id.* ¶¶ 1, 30.) When Sunrise did not pay Gerhardt, Gerhardt filed a Complaint against Sunrise Foods in Minnesota state court on September 5, 2025. (Docket No. 1.)

## II.    PROCEDURAL HISTORY

In her Complaint, Plaintiff brings seven claims: Violation of the Minnesota Payment of Wages Act (MPWA) (Count 1); breach of contract (Count 2); unjust enrichment (Count 3); promissory estoppel (Count 4); discrimination on the basis of sex under the Minnesota Human Rights Act (MHRA) (Count 5); violation of the Minnesota Whistleblower Act (Count 6); and reprisal under the MHRA (Count 7). (*Id.*)

On September 30, 2025, Sunrise Foods timely removed the case to this Court. (*See* Not. Removal, Sept. 30, 2025, Docket No. 1.) Sunrise filed a partial motion to dismiss on October 14, 2026. (Docket No. 13.) In the pending motion, Sunrise seeks dismissal of only Count 1, Gerhardt's MPWA claim. (*Id.*)

**DISCUSSION**

I.   **STANDARD OF REVIEW**

A.   **Motion to Dismiss**

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court considers all facts alleged in the complaint as true to determine if the complaint states a "claim to relief that is plausible on its face." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A court should "look only to the facts alleged in the complaint and construe those facts in the light most favorable to the plaintiff." *Riley v. St. Louis Cnty.*, 153 F.3d 627, 629 (8th Cir. 1998). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

B.   **Minnesota Payment of Wages Act ("MPWA")**

The MPWA provides for the payment of "wages or commissions actually earned and unpaid at the time of discharge[.]" Minn. Stat § 181.13(a). To invoke the statute the discharged employee must make a written "demand for payment" and "[i]f the employee's earned wages and commissions are not paid within 24 hours after demand . . . the employer is in default." *Id.* The MPWA further provides that for employees who quit or resign employment, "the wages or commissions earned and unpaid at the time the employee quits or resigns shall be paid in full not later than the first regularly scheduled payday following the employee's final day of employment, unless an employee is subject

to a collective bargaining agreement with a different provision."  Minn. Stat. § 181.14,

subd. 1.  "These two statutory provisions must be read together."  *Chatfield v. Henderson*,

90 N.W.2d 227, 232 (Minn. 1958).

> Wages are **actually earned and unpaid** if the employee was not paid for all time worked at the employee's regular rate of pay or at the rate required by law, including any applicable statute, regulation, rule, ordinance, government resolution or policy, contract, or other legal authority, whichever rate of pay is greater.

Minn. Stat § 181.13(a) (emphasis added).

The MPWA mandates "not *what* an employer must pay a discharged employee, but *when* an employer must pay a discharged employee."  *Knutson v. Schwan's Home Serv., Inc.*, 711 F.3d 911 (8th Cir. 2013) (quoting *Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826, 837 (Minn. 2012)); *see also Hall v. City of Plainview*, 954 N.W.2d 254, 270 (Minn. 2021) (noting that section 181.13(a) "does not create a substantive right to recover compensation independent of a contract or some other applicable legal authority providing for such compensation.")

In the event of a violation of the MPWA, statutory liability penalties and attorneys' fees are available to a plaintiff.  *See* Minn. Stat § 181.13(a) (describing statutory penalty), § 181.171 (allowing an employee to seek attorneys' fees and costs for a violation of § 181.13).

## II.    ANALYSIS

Sunrise moves to dismiss Count 1 of Gerhardt's Complaint (i.e., Gerhardt's claim under the MPWA) on two grounds.  First, Sunrise argues that Gerhardt's bonus was discretionary, and discretionary bonuses are not "actually earned and unpaid wages" under the MPWA.  Minn. Stat § 181.13(a).  Second, Sunrise argues that Gerhardt had not "actually earned" a 2025 fiscal-year bonus because the fiscal year was incomplete.  *Id.* The Court will address each argument in turn.

### A.    Discretionary

While Sunrise is correct that discretionary bonuses are not "actually earned and unpaid wages" under the MPWA, *id.*, the Court concludes that Gerhardt adequately alleged that at least some of her bonus was non-discretionary.

Gerhardt conceded that her "sales of **non-organic** oils" were treated by Sunrise as "discretionary" after November 2022.  (Compl. ¶ 18) (emphasis added.)  But Gerhardt's Complaint also indicates that from June 2024 to March 2025, Gerhardt was the only oil-sales team member.  (*Id.* ¶ 23.)  So, during fiscal year 2025, Gerhardt must have been selling "**Organic** Crude Oil Derivates products (COD)"—for which her employment contract provided a calculated, non-discretionary bonus. (*See id.* ¶ 10 (emphasis added.) Accordingly, Gerhardt did not concede, as Sunrise suggests, that **all** bonuses were discretionary after November 2022.

The excerpt from Gerhardt's contract provided in the Complaint further states that the "Pool distribution **within team** [would be] determined" by the Director of Oils with

approval by the VP of Food Ingredients.  (*Id.* ¶ 10 (emphasis added).)  Taking all facts alleged in the Complaint in the light most favorable to the Gerhardt, it is not reasonable to conclude that the Directors could distribute Gerhardt nothing from the bonus pool. First, Gerhardt was the whole team for the period in question, and while the contract language indicates Directors had discretion regarding distribution **within** a team, the Court is not willing to infer the Directors had discretion to **prevent** distribution to a team of just one person.

Furthermore, in her Complaint, Gerhardt alleges that Sunrise told her "that in lieu of an adjustment to her annual salary, she would receive the full pool (.738%) of eligible revenue."  (*Id.* ¶ 24.)  Again, taking all facts alleged in the Complaint in the light most favorable to Gerhardt, Sunrise made a promise to Gerhardt that overrode any discretionary language in the employment contract.

The Court, therefore, concludes, based on the allegations in the Complaint, that Gerhardt's bonus was not discretionary.

### B.    Actually Earned

Sunrise contends that its motion to dismiss should still be granted because, on the facts currently pled, Gerhardt had not "actually earned" a 2025 fiscal-year bonus prior to her termination.  Minn. Stat § 181.13(a).  Sunrise argues that because the 2025 fiscal year-bonus could not logically be calculated using the provided formula at the time of Gerhardt's resignation, Gerhardt did not actually earn any amount of the bonus she seeks.

The Court disagrees and will deny Sunrise's motion to dismiss Gerhardt's MPWA claim for two reasons.

**First**, while the Court agrees that the formula set forth in the Complaint does not provide for calculating the bonus pool at any time other than the end of a fiscal year, the provided language of the contract also did not explicitly provide that an employee must complete the fiscal year to be bonus eligible.[1]  The Court concludes that whether the contract dictated when the bonus was earned and vested is ambiguous on the record before it.[2]  The Court will, therefore, deny Sunrise's motion at least because "ambiguous contract language may not be resolved in a motion to dismiss." *Sonoiki v. Harvard Univ.*, 37 F.4th 691, 711 (1st Cir. 2022); *see also Core & Main, LP v. McCabe*, 62 F.4th 414, 420

---

[1] The Court notes that it does not have the full language of the employment contract, only the excerpt provided in the Complaint.  Because at this stage the Court must "look only to the facts alleged in the complaint and construe those facts in the light most favorable to the plaintiff[,]" *Riley*, 153 F.3d at 629, the Court cannot determine, for example, if Gerhardt's employment contract included other language or information that would further clarify the language in the excerpt provided or if the contract included language that would prohibit oral amendments to the contract.

[2] Sunrise argues that Eighth Circuit case law is clear that where an employee separates before the bonus becomes calculable, those wages are not earned under the MWPA.  But the cases cited by Sunrise are distinguishable.  In *Knutson v. Schwan's Home Serv., Inc.*, "Knutson admit[ted] that, under Home Service's plan, bonuses are not earned unless the employee was 'employed when the bonus was determined.'  He also admit[ted] that Home Service determined the bonus at issue in March 2009—after he was fired."  711 F.3d 911, 917 (8th Cir. 2013).  In contrast here, Gerhardt has made no such admission.  In *Karlen v. Jones Lang LaSalle Americas, Inc.*, Karlen had not finalized the lease for which he was claiming a commission prior to his termination.  766 F.3d 863, 868 (8th Cir. 2014).  In contrast, Gerhardt is seeking a bonus on sales completed while she was still employed by Sunrise, and there is no clear contractual language requiring the bonus be paid or conceding that a bonus was not available unless the employee was employed at a certain time.

(8th Cir. 2023) (holding that when a provision "was ambiguous . . . so that extrinsic evidence must be considered" that it "error to grant defendants' motion to dismiss" on a breach of contract claim").

**Second,** because Gerhardt has alleged that "Sunrise . . . told [her] that in lieu of an adjustment to her annual salary, she would receive the full pool (.738%) of eligible revenue" (Compl. ¶ 24), Gerhardt has adequately pled at this motion-to-dismiss stage that she had an agreement with Sunrise that superseded the language of the contract. At this stage, the Court cannot opine on whether Gerhardt's allegation will survive discovery or whether the parties further agreed on when the bonus was earned and vested. Rather the Court must "look only to the facts alleged in the complaint and construe those facts in the light most favorable to the plaintiff." *Riley*, 153 F.3d at 629. Accordingly, the Court must assume that Sunrise told Gerhardt that she would receive the full pool (.738%) of eligible revenue and that this promise was not subject to any other conditions. If that is the case, Gerhardt can pursue a claim under the MPWA; thus, the Court will deny Sunrise's motion to dismiss this claim.

## CONCLUSION

Taking all facts alleged in the Complaint as true, and construing them in Gerhardt's favor, Gerhardt has adequately pled that she "actually earned" the bonus she seeks as of her termination date for the purposes of the MPWA. *See* Minn. Stat § 181.13(a). The Court will, therefore, deny Sunrise's motion to dismiss Count 1 of Gerhardt's Complaint.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED** that Defendant Sunrise Foods International (USA) Inc.'s Partial Motion

to Dismiss (Docket No. [13]) is **DENIED.**


DATED:  May 5, 2026                                   _____/s/ John R. Tunheim_____
at Minneapolis, Minnesota.                              JOHN R. TUNHEIM
                                                        United States District Judge